UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| DONALD P. SABOURIN III | : | |
| | : | |
| v. | : | C.A. No. 15-338S |
| | : | |
| CAROLYN W. COLVIN, Acting Commissioner, Social Security Administration | : | |

**REPORT AND RECOMMENDATION**

Lincoln D. Almond, United States Magistrate Judge

This matter is before the Court for judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Supplemental Security Income ("SSI") under the Social Security Act (the "Act"), 42 U.S.C. § 405(g). Plaintiff filed his Complaint on August 12, 2015 seeking to reverse the decision of the Commissioner. On March 31, 2016, Plaintiff filed a Motion to Reverse with a Remand. (Document No. 11). On April 25, 2016, the Commissioner filed a Motion for an Order Affirming the Decision of the Commissioner. (Document No. 12).

This matter has been referred to me for preliminary review, findings and recommended disposition. 28 U.S.C. § 636(b)(1)(B); LR Cv 72. Based upon my review of the record, the parties' submissions and independent legal research, I find that there is substantial evidence in this record to support the Commissioner's decision and findings that Plaintiff is not disabled within the meaning of the Act. Consequently, I recommend that the Commissioner's Motion (Document No. 12) be GRANTED and that Plaintiff's Motion (Document No. 11) be DENIED.

## I. PROCEDURAL HISTORY

Plaintiff filed an application for SSI on July 5, 2012 (Tr. 192-200) alleging disability since October 20, 2010. The application was denied initially on September 29, 2012 (Tr. 115-122) and on reconsideration on December 6, 2012. (Tr. 124-132). On December 31, 2012, Plaintiff requested an administrative hearing. (Tr. 144). On July 25, 2013, a hearing was held before Administrative Law Judge Martha Bower (the "ALJ"). The ALJ continued the hearing to December 3, 2013 to allow Plaintiff time to retain counsel. On December 3, 2013, Plaintiff appeared without counsel[1] and testified at the hearing before the ALJ; a VE also appeared and testified. (Tr. 89-114). The ALJ issued an unfavorable decision to Plaintiff on March 7, 2014. (Tr. 63-76). The Appeals Council denied Plaintiff's Request for Review on June 16, 2015, therefore the ALJ's decision became final. (Tr. 1-4). A timely appeal was then filed with this Court.

## II. THE PARTIES' POSITIONS

Plaintiff argues that the ALJ failed to properly evaluate his right knee impairment, the opinion of treating physician Dr. Furey, and his credibility.

The Commissioner disputes Plaintiff's claims and asserts that the ALJ properly evaluated both the medical evidence and Plaintiff's credibility.

## III. THE STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence

[1] Plaintiff testified that he met with experienced Social Security counsel "but they refused me based on the fact that I didn't have enough for them to represent me." (Tr. 92).

as a reasonable person would accept as adequate to support the conclusion. Ortiz v. Sec'y of Health and Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); Rodriguez v. Sec'y of Health and Human Servs., 647 F.2d 218, 222 (1st Cir. 1981).

Where the Commissioner's decision is supported by substantial evidence, the court must affirm, even if the court would have reached a contrary result as finder of fact. Rodriguez Pagan v. Sec'y of Health and Human Servs., 819 F.2d 1, 3 (1st Cir. 1987); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991). The court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Frustaglia v. Sec'y of Health and Human Servs., 829 F.2d 192, 195 (1st Cir. 1987); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

The court must reverse the ALJ's decision on plenary review, however, if the ALJ applies incorrect law, or if the ALJ fails to provide the court with sufficient reasoning to determine that he or she properly applied the law. Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam); accord Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Remand is unnecessary where all of the essential evidence was before the Appeals Council when it denied review, and the evidence establishes without any doubt that the claimant was disabled. Seavey v. Barnhart, 276 F.3d 1, 11 (1st Cir. 2001) citing, Mowery v. Heckler, 771 F.2d 966, 973 (6th Cir. 1985).

The court may remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or under both sentences. Seavey, 276 F.3d at 8. To remand under sentence four, the court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim. Id.; accord Brenem v. Harris, 621 F.2d 688, 690 (5th Cir. 1980)

(remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow her to explain the basis for her decision. Freeman v. Barnhart, 274 F.3d 606, 609-610 (1st Cir. 2001). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. Diorio v. Heckler, 721 F.2d 726, 729 (11th Cir. 1983) (necessary for ALJ on remand to consider psychiatric report tendered to Appeals Council). After a sentence four remand, the court enters a final and appealable judgment immediately, and thus loses jurisdiction. Freeman, 274 F.3d at 610.

In contrast, sentence six of 42 U.S.C. § 405(g) provides:

> The court...may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405(g). To remand under sentence six, the claimant must establish: (1) that there is new, non-cumulative evidence; (2) that the evidence is material, relevant and probative so that there is a reasonable possibility that it would change the administrative result; and (3) there is good cause for failure to submit the evidence at the administrative level. See Jackson v. Chater, 99 F.3d 1086, 1090-1092 (11th Cir. 1996).

A sentence six remand may be warranted, even in the absence of an error by the Commissioner, if new, material evidence becomes available to the claimant. Id. With a sentence six remand, the parties must return to the court after remand to file modified findings of fact. Id.

The court retains jurisdiction pending remand, and does not enter a final judgment until after the completion of remand proceedings. Id.

## IV. THE LAW

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505. The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

### A. Treating Physicians

Substantial weight should be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. See Rohrberg v. Apfel, 26 F. Supp. 2d 303, 311 (D. Mass. 1998); 20 C.F.R. § 404.1527(d). If a treating physician's opinion on the nature and severity of a claimant's impairments, is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2). The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory. See Keating v. Sec'y of Health and Human Servs., 848 F.2d 271, 275-276 (1st Cir. 1988).

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. See Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986). When a

treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on the (1) length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical conditions at issue; and (6) other factors which tend to support or contradict the opinion. 20 C.F.R § 404.1527(d). However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. See 20 C.F.R. § 404.1527(d)(2).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. 20 C.F.R. § 404.1527(e). The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's residual functional capacity (see 20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors because that ultimate determination is the province of the Commissioner. 20 C.F.R. § 404.1527(e). See also Dudley v. Sec'y of Health and Human Servs., 816 F.2d 792, 794 (1st Cir. 1987).

**B. Developing the Record**

The ALJ has a duty to fully and fairly develop the record. Heggarty v. Sullivan, 947 F.2d 990, 997 (1st Cir. 1991). The Commissioner also has a duty to notify a claimant of the statutory right to retained counsel at the social security hearing, and to solicit a knowing and voluntary waiver of that right if counsel is not retained. See 42 U.S.C. § 406; Evangelista v. Sec'y of Health and Human Servs., 826 F.2d 136, 142 (1st Cir. 1987). The obligation to fully and fairly develop the record exists

if a claimant has waived the right to retained counsel, and even if the claimant is represented by counsel. Id. However, where an unrepresented claimant has not waived the right to retained counsel, the ALJ's obligation to develop a full and fair record rises to a special duty. See Heggarty, 947 F.2d at 997, citing Currier v. Sec'y of Health Educ. and Welfare, 612 F.2d 594, 598 (1st Cir. 1980).

**C. Medical Tests and Examinations**

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. 20 C.F.R. § 416.917; see also Conley v. Bowen, 781 F.2d 143, 146 (8th Cir. 1986). In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the ALJ to render an informed decision. Carrillo Marin v. Sec'y of Health and Human Servs., 758 F.2d 14, 17 (1st Cir. 1985).

**D. The Five-step Evaluation**

The ALJ must follow five steps in evaluating a claim of disability. See 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth,

if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f). Significantly, the claimant bears the burden of proof at steps one through four, but the Commissioner bears the burden at step five. Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five-step process applies to both SSDI and SSI claims).

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).

The claimant bears the ultimate burden of proving the existence of a disability as defined by the Social Security Act. Seavey, 276 F.3d at 5. The claimant must prove disability on or before the last day of her insured status for the purposes of disability benefits. Deblois v. Sec'y of Health and Human Servs., 686 F.2d 76 (1st Cir. 1982), 42 U.S.C. §§ 416(i)(3), 423(a), (c). If a claimant becomes disabled after she has lost insured status, her claim for disability benefits must be denied despite her disability. Id.

**E. Other Work**

Once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. Seavey, 276 F.3d at 5. In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a

claimant. Allen v. Sullivan, 880 F.2d 1200, 1201 (11th Cir. 1989). This burden may sometimes be met through exclusive reliance on the Medical-Vocational Guidelines (the "grids"). Seavey, 276 F.3d at 5. Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors. Id.; see also Heckler v. Campbell, 461 U.S. 458, 103 S. Ct. 1952, 76 L.Ed.2d 66 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills. Nguyen, 172 F.3d at 36. In almost all of such cases, the Commissioner's burden can be met only through the use of a vocational expert. Heggarty, 947 F.2d at 996. It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy. See Ferguson v. Schweiker, 641 F.2d 243, 248 (5th Cir. 1981). In any event, the ALJ must make a specific finding as to whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations.

**1. Pain**

"Pain can constitute a significant non-exertional impairment." Nguyen, 172 F.3d at 36. Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged. 42

U.S.C. § 423(d)(5)(A). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the First Circuit's six-part pain analysis and consider the following factors:

(1) The nature, location, onset, duration, frequency, radiation, and intensity of any pain;

(2) Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);

(3) Type, dosage, effectiveness, and adverse side-effects of any pain medication;

(4) Treatment, other than medication, for relief of pain;

(5) Functional restrictions; and

(6) The claimant's daily activities.

Avery v. Sec'y of Health and Human Servs., 797 F.2d 19, 29 (1st Cir. 1986). An individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423(d)(5)(A).

**2. Credibility**

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. Rohrberg, 26 F. Supp. 2d at 309. A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. See Frustaglia, 829 F.2d at 195. The failure to articulate the reasons for discrediting subjective pain testimony requires

that the testimony be accepted as true. See DaRosa v. Sec'y of Health and Human Servs., 803 F.2d 24 (1st Cir. 1986).

A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case. See Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11th Cir. 1982). If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995) (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983)).

**V. APPLICATION AND ANALYSIS**

Plaintiff was forty-six years old on the date of the ALJ's decision. (Tr. 76). He earned his GED in 2002 and worked in the past as a plasterer. (Tr. 226). Plaintiff alleges disability due to status post left rotator cuff repair, status post cervical surgery, lumbar degenerative disc disease, arthritis, right knee pain and migraines. (Tr. 68-69, 95).

On October 18, 2009, a year before the alleged disability onset date, a truck struck the left-front side of the car plaintiff was driving. (Tr. 293). The airbags did not deploy and he suffered no loss of consciousness, but he developed pain in his head and neck that "radiat[ed] down the left arm." Id.

A cervical spine MRI taken at some time between the date of the accident and March 2011 revealed a disc protrusion at C6-7 with resultant mild central stenosis; borderline C4-5 and C5-6 central stenosis related to disc bulge; milder spondylitic changes in other areas; mild neuroforaminal narrowing at C4-5, C5-6, and C6-7; and no abnormal cord signal. Id. Further, a left shoulder MRI taken at some time between the date of the accident and March 2011 revealed a one centimeter full

thickness perforation of the supraspinatus tendon insertion and possible tear of the posterior labrum, with moderate "a.c." (acromioclavicular) arthrosis. Id. Dr. Green, who eventually performed surgery on the left shoulder in July 2011, described the tear as "relatively small." (Tr. 303).

Dr. Das performed an anterior cervical diskectomy and fusion of C6-7 in March 2011. (Tr. 291, 308). In July 2011, Dr. Green performed left shoulder surgery – specifically, arthroscopic left rotator cuff tear repair and subacromial debridement with acromioplasty. (Tr. 303).

At a December 2011 follow-up examination, Mr. Spetrini, a physician's assistant in Dr. Green's practice, assessed that Plaintiff "is doing relatively well," and Plaintiff described only "occasional mild pain which is worse with activity," but said that he had abandoned an attempt to return to plastering work because that activity was now too painful. Id. Manual muscle testing ("MMT") revealed 5/5 strength "without pain." Id. Dr. Green reviewed and approved Mr. Spetrini's report. Id.

In April 2012, Dr. Das assessed a 15-18% cervical impairment, (Tr. 292), further noting that the neck was supple and nontender, and no abnormal lymph nodes were noted. Peripheral vascular exam revealed good pulses without edema or swelling. Midline spine was nontender, and the sacroiliac joints were nontender. Inspection/palpation of all four extremities revealed no defects. Deep tendon reflexes were normal in all four extremities. Sensation was intact in all four extremities. Gait was within normal limits. Coordination was normal in all four extremities. Range of motion was within normal limits in all four extremities. There was no gross instability noted in all four extremities. All muscle groups in all four extremities were tested and were found to be within normal limits. (Tr. 291). At that appointment, plaintiff only "complained of some headaches and some occasional neck pain but with resolution of much of his left arm symptoms." Id.

A September 2012 MRI of the cervical spine revealed "anatomical" (normal) alignment and "[c]ongenitally small cervical spinal canal with disk degeneration and early spondylosis which results in multilevel effacement of the anterior subarachnoid space and ventral surface of the cord with no cord signal abnormality and multilevel degenerative neural foraminal stenosis." (Tr. 325).

That same month, Dr. Furey noted a reduced range of motion in the cervical and lumbar spine and tenderness to spinal palpation, but full strength in all extremities, grossly intact sensation to light touch, and symmetrical bilateral lower extremity reflexes. (Tr. 322). Dr. Furey's examination the following month (October 2012) revealed a moderate decrease in range of motion of the neck, but only minimal tenderness to palpation over the left trapezius, and no other muscular or boney tenderness. (Tr. 331).

In November 2012, state agency physician Dr. Kuiper reviewed Plaintiff's records and opined that Plaintiff can lift/carry twenty pounds occasionally and ten pounds frequently, sit for about six hours in an eight-hour workday, and stand and/or walk for about six hours in an eight-hour workday, but cannot work with vibrating tools such as jackhammers. (Tr. 126-130).

In April 2013, Plaintiff visited Orthopedist Dr. Pizzarello, reporting "a long history of problems of the right knee. In 1988, he had reconstruction surgery consisting of a probable ACL and meniscal surgery. He did well for a period of time. Recently, the pain has progressed. No new isolated trauma." (Tr. 382). Dr. Pizzarello diagnosed right knee arthritis, including "advanced bone-on-bone degeneration," and stated that "[h]e will require a knee replacement." (Tr. 383).

In May 2013, Dr. Furey submitted an opinion stating that, in light of shoulder pain, back pain, and migraines, Plaintiff is limited to walking for two hours in an eight-hour workday, standing for two hours in an eight-hour workday, sitting for four hours in an eight-hour workday, and

lifting/carrying up to twenty-five pounds on an occasional basis, but cannot lift/carry any weight on a frequent basis. (Tr. 346-347).

**A. The ALJ's Decision**

The ALJ decided this case adverse to Plaintiff at Step 5. At Step 2, the ALJ found that Plaintiff's status post left rotator cuff surgery, status post neck surgery and lumbar degenerative disc disease were "severe" impairments as defined in 20 C.F.R. § 416.290(c). (Tr. 68). However, she did not find Plaintiff's right knee disorder, migraines or reflux to be "severe" impairments. (Tr. 69). At Step 3, the ALJ determined that Plaintiff's impairments did not, either singly or in combination, meet or medically equal any of the Listings. Id. As to RFC, the ALJ concluded that Plaintiff was able to perform a limited range of light work with standing or walking for six hours per workday and the ability to occasionally climb rope, scaffolding and ladders. Id. Based on this RFC and the VE's opinion testimony, the ALJ determined that Plaintiff was not disabled because he was capable of performing certain light and sedentary, unskilled positions available in the economy. (Tr. 75-76).

**B. The ALJ Properly Found that Plaintiff Did Not Meet His Step 2 Burden as to His Right Knee Disorder**

Plaintiff challenges the ALJ's evaluation of his right knee impairment at Step 2. The ALJ concluded that "the record fails to establish that [Plaintiff's] right knee disorder...imposes more than minimal impairments of [his] ability to engage in basic work activities for a period of at least twelve continuing months." (Tr. 69).

At Step 2, an impairment is considered "severe" when it significantly limits a claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c). The Commissioner has adopted a "slight abnormality" standard which provides that an impairment is "non-severe" when the medical evidence establishes only a slight abnormality that has "no more than a minimal

effect on an individual's ability to work." SSR 85-28. Although Step 2 is a de minimis standard, Orellana v. Astrue, 547 F. Supp. 2d 1169, 1172 (E.D. Wash. 2008) (citing Bowen v. Yuckert, 482 U.S. 137, 153-154 (1987)), it is still a standard and a standard on which Plaintiff bears the burden of proof. See Desjardins v. Astrue, No. 09-2-B-W, 2009 WL 3152808 (D.Me. Sept. 28, 2009). In her Step 2 analysis, the ALJ thoroughly discussed Plaintiff's right knee issues in the context of the record as a whole and concluded that there was insufficient medical evidence presented establishing that Plaintiff suffered a "severe" knee impairment. (Tr. 69).

An ALJ may properly base his/her Step 2 finding on the absence of medical evidence supporting a finding that a claimant suffers from a "severe medically determinable physical or mental impairment" which "significantly limits" her physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii), (c). (emphasis added). See also Teves v. Astrue, No. 08-246-B-W, 2009 WL 961231 (D.Me. April 7, 2009) ("[A] claimant's testimony about symptoms is insufficient to establish a severe impairment at Step 2 in the absence of medical evidence."). At Step 2, Plaintiff bore the burden of demonstrating that he had a "medically determinable" physical or mental impairment(s) that significantly limited his ability to do basic work activity at the relevant time. Id. The ALJ found that Plaintiff did not meet that burden as to his right knee, and Plaintiff has shown no error in her finding.

The record is undisputably thin regarding Plaintiff's knee issues. Plaintiff relies primarily on a single examination report from Dr. Pizzarello, an Orthopedist. (Ex. 6F). Dr. Pizzarello apparently saw Plaintiff on one occasion in April 2013. (Tr. 338). Plaintiff reported a long history of right knee problems and a knee surgery in 1988. Id. However, despite this claimed history, the record reflects that Plaintiff worked as a plasterer up until 2009 which the VE characterized as heavy

work as performed by Plaintiff. (Tr. 109). Dr. Pizzarello observed defects in the right knee from x-rays and diagnosed right knee arthritis. (Tr. 339). He ordered an MRI to evaluate Plaintiff's knee ligaments which was never performed. (Tr. 98, 339). Dr. Pizzarello opined that Plaintiff "will require a knee replacement" but offered no detail as to when the replacement would be necessary or the current extent of Plaintiff's function limitations due to his knee. (Tr. 339). There are no other specific references in the record to any examination or treatment of Plaintiff's right knee.

Moreover, Plaintiff himself did not mention any knee impairment when asked in July 2012 to "[l]ist all of the physical or mental conditions...that limit your ability to work." (Tr. 243). (emphasis added). Also, in a subsequent report, Plaintiff noted that the only changes in his condition were increased finger numbness and new neck and back pain. (Tr. 269). He also reported that his limitations had no effect on his ability to squat, bend, stand, sit, walk or kneel (Tr. 266) which is inconsistent with a claimed knee impairment. Finally, neither Dr. Kuiper, who viewed Plaintiff's records as of November 2012, and Dr. Furey, his treating physician who completed a report in May 2013 (Tr. 347), mentioned anything about the existence of right knee pain or limitations.

**C. Plaintiff Has Shown No Violation of the Treating Physician Rule**

The ALJ reviewed a May 2013 functional assessment completed by Dr. Furey and determined that it was not entitled to significant probative weight. (Tr. 74). She concluded that Dr. Furey's assessment was not supported by the generally unremarkable physical and neurological examinations of record, Plaintiff's treatment history or his activities of daily living. Id. Plaintiff contends that the ALJ's treatment of Dr. Furey's opinion is "inadequate in that she has not provided good reasons for the rejection of the opinion." (Document No. 11-1 at p. 8).

Because a treating physician is typically able to provide a detailed longitudinal picture of a patient's impairments, an opinion from a treating source is generally entitled to considerable weight if it is well supported by clinical findings and not inconsistent with other substantial evidence of record. 20 C.F.R. § 404.1527(d); see also Castro v. Barnhart, 198 F. Supp. 2d 47, 54 (D. Mass 2002) (The ALJ "may reject a treating physician's opinion as controlling if it is inconsistent with other substantial evidence in the record, even if that evidence consists of reports from non-treating doctors."). The amount of weight to which a treating source opinion is entitled depends in part on the length of the treating relationship, the frequency of the examinations and the extent of support for an opinion. 20 C.F.R. § 404.1527(c). If a treating source's opinion is not given controlling weight, the opinion must be evaluated using the enumerated factors and "good reasons" provided by the ALJ for the level of weight given. 20 C.F.R. § 404.1527(c)(2). Further, under 20 C.F.R. § 404.1527(e), the ultimate issue of disability, i.e., inability to work, is one reserved to the Commissioner, and no special significance is given to the source of an opinion on such issues. 20 C.F.R. § 404.1527(d)(3). These are simply "not medical opinions." 20 C.F.R. § 404.1527(d). Thus, the ultimate opinions of this treating physician that Plaintiff is unable to work is not a medical opinion covered by the scope of 20 C.F.R. § 404.1527(d)(2)'s "good reasons" requirement. See Gadoury v. Astrue, C.A. No. 08-140S, 2009 WL 2762504 at *2 (D.R.I. Aug. 27, 2009).

The ALJ properly afforded little weight to Dr. Furey's conclusory opinions. (Exh. 7F). First, his opinions were not adequately detailed or supported. See 20 C.F.R. § 404.1527(c)(3) ("the better an explanation a source provides for an opinion, the more weight we will give that opinion."). Second, the ALJ accurately observed that Dr. Furey's opinions were not consistent with the record as a whole. See 20 C.F.R. § 404.1527(c)(4). Although the record contains ample treatment notes

to support the existence of exertional limitations, Plaintiff has shown no error in the ALJ's interpretation of the record or RFC finding. Plaintiff concedes that the majority of the records show that he is neurologically intact. The ALJ found that Plaintiff was limited to less than the full range of light work. (Tr. 69). While Plaintiff is correct that his conditions have resulted in multiple orthopedic surgeries, he offers no basis for this Court to conclude that the ALJ was required on this record to accept the significant functional limitations opined by Dr. Furey.[2]

Finally, Dr. Furey's opinions conflicted with the assessments of the state agency consulting physician, Dr. Kuiper, who assessed exertional limitations consistent with the ALJ's RFC finding. (Tr. 129-130). The ALJ weighed this conflicting medical evidence, and Plaintiff has shown no error in her decision to give "significant weight" to the expert opinion of Dr. Kuiper and lesser weight to the opinions of Dr. Furey. (Tr. 74). "The ALJ's resolution of evidentiary conflicts must be upheld if supported by substantial evidence, even if contrary results might have been tenable also." Benetti v. Barnhart, 193 Fed. Appx. 6, 2006 WL 2555972 (1st Cir. Sept. 6, 2006) (per curiam) (citing Rodriguez Pagan v. Sec'y of HHS, 819 F.2d 1 (1st Cir. 1987)). In other words, the issue presented is not whether this Court would have found Plaintiff's impairments to be disabling but whether the record contains sufficient support for the ALJ's non-disability finding. Plaintiff has shown no error in the ALJ's evaluation of the medical evidence.[3]

[2] Plaintiff also faults the ALJ for not explicitly discussing all of the factors set forth in the treating physician rule, 20 C.F.R. § 404.1527(c). (Document No. 11-1 at pp. 8-9). However, "the ALJ was not required to discuss each of the regulator criteria; the First Circuit has upheld the rejection of treating-physician opinions on the basis of select factors." Dietz v. Astrue, No. 08-30123-KPN, 2009 WL 1532348 at *7 (D. Mass. May 29, 2009) (citations omitted); see also Johnson v. Comm'n of SSA, No. 13-cv-525-JL, 2015 WL 1119977 at *2 (D.N.H. March 12, 2015) (the treating physician rule "stops short of requiring an ALJ's decision to expressly apply each of the six relevant factors"). Thus, Plaintiff's argument is unsupported.

[3] Plaintiff also challenges the ALJ's credibility finding that Plaintiff's "activities of daily living belie the severity of the symptoms alleged." (Tr. 74). While Plaintiff disagrees with the ALJ's "characterization" of the record, his argument is completely undeveloped. Plaintiff does not identify any inaccuracy in the ALJ's discussion of his

## VI. CONCLUSION

For the reasons discussed herein, I recommend that the Commissioner's Motion for an Order Affirming the Decision of the Commissioner (Document No. 12) be GRANTED and that Plaintiff's Motion to Reverse with a Remand (Document No. 11) be DENIED. Further, I recommend that Final Judgment enter in favor of Defendant.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within fourteen (14) days of its receipt. See Fed. R. Civ. P. 72(b); LR Cv 72. Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision. See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
May 18, 2016

activities. He simply disputes the ALJ's interpretation of such activities but fails to demonstrate that there is not substantial evidence to support the ALJ's challenged credibility determination. Plaintiff has shown no error.